**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.fisb.uscourts.gov

IN RE:                                          CASE NO: 20-14372-MAM
                                                Chapter 11

ROBERT J. MOCKOVIAK and
SANDRA H. MOCKOVIAK,

Debtor.
_____/

LQD BUSINESS FINANCE, LLC,                      Adv. Proc. No.

        Plaintiffs,

v.

ROBERT J. MOCKOVIAK and
SANDRA H. MOCKOVIAK,,

        Defendant.
_____/

## COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT AND TO DENY DISCHARGE UNDER 11 U.S.C. SECTIONS 523 AND 727

        COMES NOW the Plaintiff, LQD BUSINESS FINANCE, LLC (hereinafter referred

to as "LQD" or as "Plaintiff"), by and through its undersigned counsel, and files the instant

Complaint to Determine Non-Dischargeability of Debt and to Deny Discharge under 11

U.S.C. Sections 523 and 727 against Defendants, ROBERT J. MOCKOVIAK and

SANDRA H. MOCKOVIAK (hereinafter referred to as the "Debtors" or as "Defendants"),

and in support thereof, Plaintiff alleges and shows unto the Court the following:

### Nature of Claims

        1.        This is an adversary proceeding brought pursuant to Fed. R. Bank. P. 7001

seeking judgments that the debts Defendants owe to Plaintiff are non-dischargeable

{00170966}

pursuant to 11 U.S.C. §§ 523(2)(A) and (B), (4) and (6) and that Defendants are not entitled to a discharge pursuant to §727(a)(2),(4) and (5).

2.      This action specifically arises out of Defendants' false representations and actual fraud in their dealings with Plaintiff; the Defendants' involvement in the making and submission of materially false statements and documents to Plaintiff with respect to their financial condition and that of their company with the intent to deceive Plaintiff; the Defendants' fraud and defalcation while acting in a fiduciary capacity, embezzlement and larceny; the Defendants' infliction of willful and malicious injury upon Plaintiff; the Defendants' failure to keep or preserve recorded information from which their financial condition can be ascertained; the Defendants' numerous false oaths in the context of the underlying bankruptcy and the Defendants' failure to adequately explain their loss of assets or a deficiency of assets to meet their liabilities.

## **Jurisdiction and Venue**

3.      This Court has jurisdiction over the subject matter of the instant proceeding arising under Title 11 of the United States Code pursuant to 28 U.S.C. §§ 157(a) and 1334.

4.      The instant action is a "core" proceeding pursuant to the provisions of 28 U.S.C. §§ 157(b)(2)(I).

5.      Venue for this action is proper in the United States Bankruptcy Court for the Southern District of Florida pursuant to 28 U.S.C. § 1409(a).

## The Parties

6.      Defendants are husband and wife and reside in Florida.  Defendants filed a joint petition for relief under Chapter 11 of Title 11 of the United States Code on or about April 10, 2020.  The case is presently pending before the United States Bankruptcy Court for the Southern District of Florida under Case Number: 20-14372-MAM.

7.      Defendants filed their schedules of assets and liabilities and their statement of financial affairs in May of 2020.  These documents reflect that as of the Petition Date, (i) Defendants owned 4 luxury residences, including 2 in Florida, 1 in New Jersey and 1 in Pennsylvania, and (ii) that Defendants owned automobiles worth close to $1 million, jewelry of $851,700.00, collectibles of $8,932,000.00, household goods of $1,145,250 and clothing of $263,500.00.

8.      Defendants have reported in their bankruptcy schedules that their primary residence in Florida is worth $1,500,000.00 and their remaining real properties are worth $5,750,000.00, for a total value of $7,250,000.00.  These values differ substantially from the financial statement Defendants presented to Plaintiff in July of 2019 in connection with the original underwriting of the loans that Plaintiff made to Defendants.  A copy of Defendants' July 2019 financial statement is attached hereto as Exhibit "A."  According to Defendants' financial statement of July 15, 2019, Defendants owned real estate worth $17,100,000.

9.      Defendants also owned and operated an equestrian business in Pennsylvania that reported substantial losses.  Defendants' 2017 tax return reported wages of approximately $1.9 million and active losses from their equestrian business of <$2,788,956>.  Defendants did not have sufficient income from CPI to sustain their

equestrian business alone and when debt service on their four residences is considered they were bleeding cash. Defendants' cash bleed continued into 2019, when their wages from CPI were reduced by approximately $1 million.

10.   Defendants' schedules do not explain why the reported value of their real estate holdings dropped by $9,850,000 from July of 2019 to April 10, 2020. Defendants' schedules also do not explain why the value of their primary residence in Florida dropped from $3,600,000.00 in July of 2019 to $1,500,000.00 in April of 2020.

11.   Defendants' bankruptcy schedules also do not reflect the disposition of the millions of dollars that Defendants fraudulently and willfully diverted in late 2019 and early 2020 from their closely held business, Clinical Professionals Inc. ("CPI"). Defendants have acknowledged that $3,416,000.00 of proceeds from the collection of Plaintiff's accounts receivable have not been accounted for. Defendants were able to divert these funds by submitting fraudulent borrowing base certificates to Plaintiff reflecting that receivables were still outstanding when, in fact, those receivables had been paid and the proceeds embezzled by Defendants instead of paid to Plaintiff.

12.   CPI is a New Jersey Corporation. CPI is an insider of each of the Debtors.

13.   At all times relevant to the allegations contained herein, Sandra Mockoviak was an officer and a person in control of CPI.

14.   At all times relevant to the allegations contained herein, Defendants represented that Robert Mockoviak owned 100% of CPI. Defendants repeated this representation as late as February of 2020. This was a material representation regarding CPI. In the middle of February 2020, Plaintiff learned for the first time that many months

prior to the LQD Loans (as defined below), Robert Mockoviak sold 15% of the stock of CPI to an entity known as Palm Beach Capital and in exchange received several million dollars.  The disposition of the funds received from Palm Beach Capital is unknown at present.

15.     Plaintiff is a commercial lender organized under the laws of Delaware and conducting business in Chicago, Illinois.

### Background

16.     On August 23, 2019, Defendants and CPI, jointly and severally entered into a revolving loan agreement wherein LQD agreed to loan to the Defendants and CPI on a revolving basis up to $5,250,000.00 (the "Revolving Loan"). A true and correct copy of the LQD Secured Loan Agreement Number 5000403 is attached hereto and incorporated herein by reference as Exhibit "B." (the "Revolving Loan Agreement").

17.     On August 23, 2019, the Defendants and CPI, jointly and severally, entered into a term loan agreement wherein LQD loaned to Defendants and CPI $1,500,000.00 (the "Term Loan" and, along with the Revolving Loan, the "Loans"). A true and correct copy of the LQD Secured Loan Agreement Number 5000404 is attached hereto and incorporated herein by reference as Exhibit "C" (the "Term Loan Agreement" and the Revolving Loan Agreement are the "Loan Agreements")

18.     At the time they entered into the Loan Agreements, the Defendants implicitly and explicitly represented that they would comply with and that they would cause CPI to comply with the terms of the Loans. These were false representations because, in fact, Defendants had no present intention to comply with the terms of the Loan Agreements,

including the provisions requiring Defendants and CPI to deposit receivable collections into a lockbox.  Defendants engaged in false pretenses, false representations, and actual fraud to secure the proceeds of the Loan Agreements including, without limitation, by submitting knowingly false financial statements and accounts receivable reports.

19.    Pursuant to Section 9 of the Loan Agreements, CPI and Defendants granted to LQD a security interest in all of their assets and all products and proceeds thereof (collectively, the "Collateral") to secure the obligations under the Loan Agreements (the "Security Interest").

20.    Pursuant to its Security Interest, LQD holds a lien, among other Collateral, on all "Accounts Receivable" owed by the account debtors of CPI and all products and proceeds thereof.

21.    On August 21, 2019, LQD filed its UCC-1 Financing Statement with the State of New Jersey, Department of Treasury, Division of Revenue & Enterprise Services, perfecting its Security Interest" in the Collateral, including the Accounts Receivable. A true and correct copy of the New Jersey UCC-1 is attached hereto and incorporated herein by reference as Exhibit "D."

22.    On January 27, 2020, LQD filed UCC-1's with the Pennsylvania Department of State and the Florida Secured Transaction Registry. True and correct copies of the Pennsylvania UCC-1 and the Florida UCC-1 are attached hereto as Exhibit "E" and Exhibit "F", respectively.

23.    The Revolving Loan Agreement defines an "Eligible Receivable" as "[a] Receivable (i) for which there is a bona fide invoice for an amount that is fully earned and

owing to either Borrower by an unrelated third party, (ii) that is 90 days or less outstanding from the date of the invoice, (iii) for which there is no delinquency or uncertainty as to collection, and (iv) which is subject to the "Additional Eligibility Criteria" listed on Schedule E of the Revolving Loan Agreement.

24.     Under the Revolving Loan Agreement, the maximum amount CPI and the Defendants could borrow was $5,250,000.00.

25.     The Revolving Loan Agreement further provided in Section 6 that:

Payment made by any Borrower's obligors on the Receivables shall be remitted only to the Agent's lockbox account (the "Lockbox Account"), as directed below. Borrowers shall direct, in a form and manner acceptable to Lender in Lender's sole discretion, all of each Borrower's obligors to direct payments of Receivables to the Lockbox Account.

26.     Section 6 of the Revolving Loan Agreement also provided that:

In the event any payment with respect to a Receivable is remitted directly to the Borrowers (or either of them) and not directly to the Lockbox Account as required under this Agreement, the Borrowers shall send, by wire transfer, the amount of such payment to the Lockbox Account on or prior to the business day following the date of such receipt (in immediately available funds).

27.     Between September 3, 2019 and January 10, 2020, CPI and the Defendants received not less than $3,416,000.00 in proceeds from the collection of accounts receivable on which LQD had a perfected security interest but did not forward any of these funds to the Lockbox Account or to LQD. A true and correct ledger of bank activity is attached hereto and incorporated herein by reference as Exhibit "G."

28.     The fact of Plaintiff's Security Interest and the diversion and misappropriation of the collateral funds referenced above was well known to the

Defendants, who knowingly and actively participated in a plan or scheme with CPI to misappropriate, steal and divert Plaintiff's property.

29.     At all times, the Defendants had sole and exclusive control of the CPI bank accounts.

30.     Defendants conceded in the Forbearance Agreement (defined below) that they received not less than $3,416,000.00 from account debtors and failed to forward such funds to the Lockbox Account.

31.     Defendants also conceded in the Forbearance Agreement that they submitted to Plaintiff accounts receivable information and maximum advance certificates that contain inaccuracies regarding the amounts of Eligible Receivables.

32.     Further investigation by Plaintiff establishes that the MAC Certificates Defendants submitted or approved were rife with fraud.  Among other things, several of the account debtors reported that they did not owe any money to CPI even though CPI and the Defendants reported that funds were owing.

33.     In addition, the Defendants used the business account of CPI as their personal "piggy-bank", regularly making cash withdrawals in violation of the Loan Agreements, in contravention of Plaintiff's Security Interest, and in breach of their duties as fiduciaries, shareholders and officers. Over a span of several months, Sandra Mockoviak used approximately $171,192.76 of CPI's property to make payments on her personal credit cards.  Defendants also made substantial cash withdrawals from the CPI bank account and in early January transferred $266,042.96 out of CPI to an as yet unidentified account. This transfer was made within days after CPI obtained a

$500,000.00 loan under false pretenses.  Plausibly these funds were used by Defendants to sustain their 4 residences and their money-losing equestrian business.

34.    That Defendants pilfered the property and cash of CPI is evident from the ultra-extravagant lifestyle Defendants enjoyed to the detriment of Plaintiff.  At a time when CPI was in default of its obligations to Plaintiff and CPI's employees had not been paid wages for approximately six weeks, Robert Mockoviak purchased a rare Ferrari automobile for almost $1,000,000.00.  Mr. Mockoviak purchased this asset at or about the time that he was demanding compensation from CPI and less than two months before he filed for bankruptcy relief.  Likewise, on or about September 14, 2019, or seven months prior to filing bankruptcy, Robert Mockoviak and a corporation in which he has or had an interest, Infinite Holdings Corporation ("IHC"), purchased another Ferrari automobile for $238,953.67.

35.    The Defendants knowing and active participation in the plan or scheme to misappropriate, steal and divert the collateral funds by making false statements and submitting false documents constitutes actual fraud, fraud or defalcation in a fiduciary capacity, embezzlement, larceny as well as the infliction of a willful or intentional injury upon LQD.

36.    Section 13(c) of Loan 5000403 requires the following:

All information heretofore or contemporaneously herewith furnished by any Borrower to the Agent or any Lender for purposes of or in connection with this Agreement and the Loan is, and all information hereafter furnished by or on behalf of any Borrower to the Agent or any Lender pursuant hereto or in connection herewith will be, true and accurate in every material respect on the date as of which such information is dated or certified, and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading in light of the circumstances under which it was made. Without limiting the generality of

the foregoing, each Receivable represented on any Maximum Advance Certificate or other report delivered to the Agent as an "Eligible Receivable" meets all of the eligibility criteria set forth herein.

37.    On or about January 14, 2020, the Defendants, with the assistance of the Chief Operating Officer and accountant of Clinical Professionals, Inc., submitted a Maximum Advance Certificate for the month ending December 31, 2019, wherein they fraudulently misrepresented  the Eligible Receivables of CPI to be $6,117,687.39 (the "December MAC"). A true and correct copy of the Maximum Advance Certificate is attached hereto and incorporated herein by reference as Exhibit "H."

38.    The December MAC was materially fraudulent and false in multiple respects, including:

a.  In order to hide their misappropriation of collateral funds, to inflate the Eligible Receivables, and to fraudulently induce Plaintiff to advance more funds, the Defendants, along with the other persons involved in preparing the December MAC, knowingly and fraudulently failed to apply the diverted payments in the amount of $3,416,000.00 referenced above to outstanding Receivables when they submitted the December MAC. In fact, Defendant's actual Eligible Receivable balance was millions of dollars less than the $6,117,687.39 that was represented to Plaintiff in the December MAC.

b.  The Defendants, along with other persons involved in preparing the December MAC and related documents, fraudulently represented to Plaintiff that certain customers, including Pfizer and Reflexion owed receivables to CPI that were due, owing and eligible receivables within the definition of the Revolving Loan Agreement when, in

fact, such customers did not owe the respective receivables to CPI,  Plaintiff reasonably relied upon such false representations by advancing funds to CPI.

39.    The Defendants' knowing and fraudulent failure to credit the diverted payments to outstanding Receivables in the December MAC constitutes false pretenses, a false representation and/or actual fraud, written fraud as to their financial condition, fraud in furtherance of defalcation in a fiduciary capacity, embezzlement, larceny as well as the infliction of a willful or intentional injury upon LQD.

40.    The Defendants' knowing and fraudulent misrepresentation in the December MAC that eligible receivables were owed by certain customers, including Pfizer and Reflexion constitutes false pretenses, a false representation and/or actual fraud, written fraud as to their financial condition, fraud in furtherance of defalcation in a fiduciary capacity, embezzlement, larceny as well as the infliction of a willful and malicious injury upon Plaintiff with an intent to harm Plaintiff.

41.    Section 13(h) in both Loan Agreements provide as follows:

WITH THE EXCEPTION OF ORDINARY COURSE TRADE DEBT, THE COMPANY BORROWERS SHALL NOT INCUR ANY ADDITIONAL INDEBTEDNESS WITHOUT THE PRIOR WRITTEN CONSENT OF THE AGENT, INCLUDING WITHOUT LIMITATION, ANY MERCHANT CASH ADVANCES, BANK LOANS, FACTORING LINES, LINES OF CREDIT, OR EQUIPMENT FINANCING. EACH BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS ACTED IN RELIANCE OF THIS REPRESENTATION AND WOULD BE MATERIALLY HARMED BY THE BREACH OF THIS REPRESENTATION BY ANY BORROWER.

42.    On January 6, 2020, the Defendants caused CPI to enter into an Agreement for the Purchase and Sale of Future Receipts with Global Merchant Cash, Inc. (the "Global MCA") without Plaintiff's prior approval and without notifying Plaintiff as required by the

Loan Agreements.  A true and correct copy of the Global MCA is attached hereto and incorporated herein by reference as Exhibit "I".  The net effect of The Global MCA was that the Defendants knowingly and fraudulent caused CPI to sell, assign and transfer to another creditor a specified percentage of receipts that had already been pledged to Plaintiff.

43.     By entering into the Global MCA, Defendants obtained the ability to extract an additional $500,000 from CPI at a time when CPI was not paying its employees and shortly before Robert Mockoviak purchased a $1,000,000.00 Ferrari automobile. Defendants have not accounted for the disposition of the $500,000.00 received from the Global MCA.

44.     The Defendants' knowing and fraudulent participation in CPI's entry into Global MCA constitutes false pretenses, a false representation and/or actual fraud, fraud in furtherance of defalcation in a fiduciary capacity, embezzlement, larceny as well as the infliction of a willful and malicious injury upon Plaintiff with an intent to injure Plaintiff.

45.     Without knowledge of the full scope of the Defendants fraudulent activities, on or about February 7, 2020, LQD prepared a Forbearance Agreement, (the "Forbearance Agreement") with the Defendants and CPI.   A true and correct copy of the Forbearance is attached hereto and incorporated by reference as Exhibit "J."

46.     The Forbearance Agreement was actively negotiated over the course of several weeks and Defendants and CPI were represented and advised by Greenberg Traurig, LLP, a large nationally recognized law firm.

47.     At the time of their entry into the Forbearance Agreement, the Defendants implicitly and explicitly represented that they would comply with same and that they would cause CPI to comply with same; however, in fact, they had no present intention to do so and essentially engaged in false pretenses, false representation and actual fraud in order to buy time and to secure a delay in collections activities on the part of Plaintiff.

48.     Under Section 7 the Forbearance Agreement, Defendants and CPI (collectively, the "Borrowers") reaffirmed the following:

> Borrowers, jointly and severally, (i) consent to this Agreement; (ii) ratify and reaffirm all of their Obligations, including the amount of the Indebtedness, their respective payments and performance obligations, contingent or otherwise, under the Loan Documents and any subordination agreements and intercreditor agreements relating to the Indebtedness; (iii) ratify and reaffirm all security interests, mortgages, and liens granted for the benefit of Lender and confirm and agree that such security interests, mortgages, and liens hereafter secure all of the Obligations and the full amount of the Indebtedness, (iv) acknowledge and agree that each of the Loan Documents remains in full force and effect and is hereby ratified and reaffirmed, (v) reaffirm, remake as true as of the date hereof and ratify each of the Representations, Warranties and Covenants in the Loan Documents and (vi) acknowledge and agree that they have no setoff, defenses, crossclaim, demand, counterclaims or rights that can be asserted to or, if asserted would, impair or otherwise limit or reduce Lender's rights under the Loan Documents or to seek affirmative relief or damages against Lender, (vii) acknowledge and agree that in entering into this Agreement they are not relying upon any statement, representation or action of Lender or its agents, and (viii) acknowledge and agree that Lender has a duly perfected first priority security interest in and lien upon all of the Collateral, except for Real Property.

49.     Plaintiff's obligation to forbear from exercising its rights under the Forbearance Agreement was conditioned upon, among other things, Defendants and CPI: (i) executing a Management Services Agreement with a financial Advisory Firm, (ii) delivering to Plaintiff mortgages or deeds of trust upon each parcel of Real Property the Defendants owned other than their Florida residence, (iii) providing an asset and liability

report to Plaintiff, (iv) Robert Mockoviak executing a Stock Pledge Agreement in favor of Plaintiff, and (v) providing copies of all insurance policies held by any Borrower.

50.    On February 12, 2020, the Defendants and CPI feigned an intent to comply with the Forbearance Agreement by executing a Management Services Agreement with the Advisory Firm and by hiring a Chief Restructuring Officer. A true and correct copy of the Management Services Agreement is attached hereto and incorporated herein by reference as Exhibit "K".

51.    After executing the Forbearance Agreement, the true intent of the Defendants and CPI was revealed in that they failed to deliver the required Stock Pledge Agreement, the required mortgages, or  any of the required financial or other documents requested by Plaintiff. Defendants also intentionally prevented the Chief Restructuring Officer assigned pursuant to the Forbearance Agreement, to perform its duties under the Forbearance Agreement.

52.    After entering into the Forbearance Agreement, the Defendants and CPI further evidenced their true intent by continuing to neglect their basic obligations to their creditors and other stakeholders.  This neglect included:

a.    Failing to pay employees for three (3) consecutive payrolls (approximately 6 weeks), even though they had the opportunity to obtain funds from LQD to pay employees, but deliberately rejected that opportunity;

b.    Refusing to communicate with LQD about the status of LQD's collateral and the business operations. In fact, they failed to respond or communicate in any meaningful way with LQD or the Chief Restructuring Officer despite the urgent issues facing the business;

c.    Continuing to unilaterally mismanage CPI on an ongoing and daily basis;

d.    Refusing to meaningfully utilize the services and expertise of an experienced Chief Restructuring Officer hired to assist Defendants' business which ultimately led to the resignation of the Chief Restructuring Officer. A true and correct copy of the Resignation Email of Chief Restructuring Officer attached hereto and incorporated herein by reference as Exhibit "L".

e.    Failing to assure fulfillment of CPI's financial obligations as and when due, including its obligations to LQD and its obligations to its employees.

53.    Defendants and the company they controlled, CPI, never intended to comply with the Forbearance Agreement and, true to plan, they intentionally and without justification defaulted under the Forbearance Agreement in numerous respects, as described above, and failed to comply with many of the requirements in the Forbearance Agreement and the Management Services Agreement even though they had the ability to comply.

54.    The conduct and facts described above, together with Defendants' ongoing refusal to perform even basic accounting functions or honor their contractual obligations evidences not only intentional acts, but also false pretenses, a false representation and/or actual fraud, fraud in furtherance of defalcation in a fiduciary capacity, embezzlement, larceny as well as the infliction of a willful or intentional injury upon Plaintiff.

55.    As of the filing of its Proof of Claim in the underlying Bankruptcy Proceedings, LQD held and, to date, it continues to hold fixed and liquidated claims of $6,381,063.79 and $1,276,840.09, respectively.

56.    The Defendants' actions as hereinabove alleged, including their false pretenses, a false representation and/or actual fraud, written fraud as to their financial condition, fraud in furtherance of defalcation in a fiduciary capacity, embezzlement, larceny as well as the infliction of a willful or malicious injury, has and continues to cause harm to LQD.

57.    All conditions precedent to the bringing of this action have been performed, have occurred or have been waived.

## Count I – Objection to Discharge of Debt under §523(a)(2)

58.    The preceding paragraphs are re-adopted and re-alleged as if fully set forth herein at length.

59.    Pursuant to section 523(a)(2) of the Bankruptcy Code, a debt for money, property, services, or an extension, renewal, or refinancing of credit, is not dischargeable to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

60.    The obligations owed to Plaintiff are non-dischargeable debts arising out of false pretenses, false representations and actual fraud.

61.    The obligations owed to Plaintiff are also non-dischargeable debts arising out of materially false statements in writing regarding the Defendants' and CPI's financial condition, on which Plaintiff reasonably relied and with respect to which Defendants intended to deceive Plaintiff.

62.    Accordingly, Defendants' debts to Plaintiff are non-dischargeable and cannot legally be disputed in this adversary proceeding.

63.    Pursuant to applicable law, Plaintiff is entitled to reimbursement from Defendants for Plaintiff's attorneys' fees and costs in pursuing this matter.

WHEREFORE Plaintiff, LQD BUSINESS FINANCE, INC. respectfully requests the entry of a judgment in its favor and against Defendants, ROBERT J. MOCKOVIAK and SANDRA H. MOCKOVIAK finding that the debt owed by them to LQD BUSINESS FINANCE, INC., along with accrued interest incurred and continuing to be incurred, costs and attorneys' fees incurred in the instant proceeding and the underlying state court proceedings are non-dischargeable under Section 523(a)(2)(A) and (B) as well as such other and further relief this Court deems just and proper under the circumstances.

### Count II – Objection to Discharge of Debt under §523(a)(4)

64.    The preceding paragraphs are re-adopted and re-alleged as if fully set forth herein at length.

65.    Pursuant to section 523(a)(4) of the Bankruptcy Code, a debt arising from fraud or defalcation while acting in a fiduciary capacity is non dischargeable.

66.    Pursuant to section 523(a)(4) of the Bankruptcy Code, a debt arising from embezzlement, or larceny is a non-dischargeable debt.

67.    As a result of CPI's insolvency and Defendants' positions as persons in control of CPI, the Defendants held the assets of CPI in trust for the benefit of its creditors and were cloaked with the duties of trustees for the benefit of creditors, including Plaintiff.

68.    Defendants' debt to Plaintiff arose from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

69.    Accordingly, Defendants' debt to Plaintiff is non-dischargeable and cannot legally be disputed in this adversary proceeding.

70.    Pursuant to applicable law, Plaintiff is entitled to reimbursement from Defendant for Plaintiff's attorneys' fees and costs in pursuing this matter.

WHEREFORE Plaintiff, LQD BUSINESS FINANCE, INC. respectfully requests the entry of a judgment in its favor and against Defendants, ROBERT J. MOCKOVIAK and SANDRA H. MOCKOVIAK finding that the debt owed by them to LQD BUSINESS FINANCE, INC., along with accrued interest  incurred and continuing to be incurred, costs and attorneys' fees incurred in the instant proceeding and the underlying state court proceedings are non-dischargeable under Section 523(a)(4) as well as such other and further relief this Court deems just and proper under the circumstances.

## Count III– Objection to Discharge of Debt under §523(a)(6)

71.    The preceding paragraphs are re-adopted and re-alleged as if set forth herein at length.

72.     Pursuant to section 523(a)(6) of the Bankruptcy Code, a debt for "for willful and malicious injury" by a debtor to another or to the property of another is a non-dischargeable debt.

73.     The obligations owed to Plaintiff are the result off the willful and malicious actions of Defendants against Plaintiff which were intended to cause, and did cause, the harm, damages and injury sustained.

74.     Not only did Defendants' debt to Plaintiff arise as a result of their willful and malicious injury to Plaintiff such that not only their actions were willful and malicious, but the damages sustained by Plaintiff were also willfully and maliciously inflicted.

75.     Accordingly, Defendants' debt to Plaintiff is non-dischargeable and cannot legally be disputed in this adversary proceeding.

WHEREFORE Plaintiff, LQD BUSINESS FINANCE, INC. respectfully requests the entry of a judgment in its favor and against Defendants, ROBERT J. MOCKOVIAK and SANDRA H. MOCKOVIAK finding that the debt owed by them to LQD BUSINESS FINANCE, INC., along with accrued interest incurred and continuing to be incurred, costs and attorneys' fees incurred in the instant proceeding and the underlying state court proceedings are non-dischargeable under Section 523(a)(6) as well as such other such other and further relief this Court deems just and proper under the circumstances.

## Count IV– Objection to Discharge under §727(a)(2)(A) and (B)

76.     The preceding paragraphs are re-adopted and re-alleged as if set forth herein at length.

77.    Pursuant to section 727(a)(2) of the Bankruptcy Code, the "court shall grant the debtor a discharge unless—

(2)   the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A)   property of the debtor, within one year before the date of the filing of the petition; or

(B)   property of the estate, after the date of the filing of the petition.

78.    The Defendants, with the intent to hinder, delay or defraud LQD within one year before filing bankruptcy, transferred, removed or concealed, or permitted to be transferred removed or concealed funds in the amount of $3,416,000.00, in CPI as to which they held an eighty five percent (85%) shareholder interest.

79.    Accordingly, the Defendants' discharge should be denied pursuant to section 727(a)(2).

WHEREFORE the Plaintiff, LQD BUSINESS FINANCE, INC. respectfully requests the entry of a judgment in its favor and against Defendants, ROBERT J. MOCKOVIAK and SANDRA H. MOCKOVIAK denying their discharge pursuant to 11 U.S.C. Section 727(a)(2) as well as such other such other and further relief this Court deems just and proper under the circumstances.

## Count V– Objection to Discharge under §727(a)((4)

80.     The preceding paragraphs are re-adopted and re-alleged as if set forth herein at length.

81.     Pursuant to section 727(a)(4) of the Bankruptcy Code, the "court shall grant the debtor a discharge unless—

(4)   the debtor knowingly and fraudulently, in or in connection with the case—

….(A) made a false oath or account; [or] (B) presented or used a false claim

82.     The Defendants, in conjunction with their Bankruptcy Case, have filed a Complaint against LQD Business Finance, LLC, LQD Loans Two, LLC, and George Souri under Case Number 20-14372-MAM in which they have made numerous false claims as to the intentions and actions of LQD in relationship to their loans. The claims alleged therein are without factual basis and Plaintiff believes and alleges that Defendants know that such claims are without factual basis.

83.     The claims alleged by Defendants against LQD are false claims within the meaning of section 727(a)(4)(B) and, therefore, the Defendants' discharge should be denied.

84.     The Defendants, in conjunction with their bankruptcy case, have also made false oaths consisting of their failure to list all of their assets and liabilities and the information required for such assets and liabilities, including but not limited to:

a.   Defendants have materially misrepresented the values of their real estate holdings by almost $10 million, as explained above.

b.   Defendants have materially misrepresented the value of their business interests, as noted above.

c.   Defendants have failed to disclose their obligations to Palm Beach Capital, Ice Miller, and Greenberg Traurig for legal services

d.   Defendants' have failed to list in their schedules the substantial amounts they owe to CPI for funds received, for mismanagement and for other misconduct, including breach of fiduciary duty;

e.   Defendants have failed to disclose in their schedules CPI's liabilities, which may be Defendants' liabilities under various theories;

f.    Defendants have failed to list the 2018 Ferrari in their schedules, or the facts surrounding any pre-bankruptcy disposition of the vehicle or the entity that jointly owned the vehicle;

g.   Defendants have failed to list in their schedules their interest in Legacy Stables or their disposition of such interest;

h.   Defendants have failed to disclose in their bankruptcy schedules the sums they owe to CPI's employees under New Jersey law on account of their failure to pay wages to such employees;

i.    Defendants have misrepresented their income from 2018, 2019 and 2020 because they did not disclose the property they received from CPI that was not included on a W2 form;

j.    Defendants have also made multiple false oaths at their meeting of creditors under 11 U.S.C. § 341.  Such false oaths include but are not limited to:

a.    Defendants stated that the information set forth in their bankruptcy schedules is true and correct, notwithstanding the foregoing misrepresentations;

b.    Defendants mischaracterized Plaintiff and misrepresented the actions of Plaintiff and its representatives in their dealings with Defendants and their company;

c.    Defendants misrepresented the circumstances under which they secured the loan with the stock pledge;

d.    Defendants misrepresented their performance under the loan documents;

e.    Defendants misrepresented the reasons why they needed the loan from Plaintiff;

f.    Defendants misrepresented the condition of their company leading up to its business dealings with Plaintiff;

g.    Defendants misrepresented the circumstances underlying and reasons for their execution of various documents;

h.    Defendants misrepresented the cause and circumstances giving rise to their financial problems; and

i.    Defendants misrepresented the condition and value of their company.

WHEREFORE the Plaintiff, LQD BUSINESS FINANCE, INC. respectfully requests the entry of a judgment in its favor and against Defendants, ROBERT J. MOCKOVIAK and SANDRA H. MOCKOVIAK denying their discharge pursuant to 11 U.S.C. Section

727(a)(4) as well as such other such other and further relief this Court deems just and proper under the circumstances.

**Count VI– Objection to Discharge under §727(a)(5)**

85.    The preceding paragraphs are re-adopted and re-alleged as if set forth herein at length.

86.    Pursuant to section 727(a)(5) of the Bankruptcy Code, the "court shall grant the debtor a discharge unless—

(5)  the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

87.    The Defendants, in conjunction with their Bankruptcy Case, have failed to explain satisfactorily the deficiency of their assets to meet their debts.  Examples of such failures to explain include the following:

a. Defendants reported to Plaintiff in July of 2019, that they owned real property worth $17,100,000, whereas Defendants' bankruptcy schedules report real estate worth $7,250,000

b. Defendants reported in their 2017 tax return that they owned an entity known as Legacy Stables, LLC but that entity does not appear in their bankruptcy schedules;

c. Defendants reported in their July 2019 financial statement that they had corporate interests worth $45,000,000, but such corporate interests do not appear in their bankruptcy schedules.

88.    Accordingly, the Defendants' discharge should be denied pursuant to section 727(a)(5).

WHEREFORE the Plaintiff, LQD BUSINESS FINANCE, INC. respectfully requests the entry of a judgment in its favor and against Defendants, ROBERT J. MOCKOVIAK and SANDRA H. MOCKOVIAK denying their discharge pursuant to 11 U.S.C. Section 727(a)(5) as well as such other such other and further relief this Court deems just and proper under the circumstances.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Dated this 10th day of July, 2020.

KELLEY, FULTON & KAPLAN, P.L.
Attorneys for Plaintiffs
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, Florida 33401
Telephone No.: (561) 491-1200

{00170966}                                          25

Facsimile No.: (561) 684-3773

By:  /s/ Andrew Fulton, IV
      Andrew Fulton, IV, Esquire
      Florida Bar No.: 833487

{00170966}                                                    26